## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jose G. Rodriguez-Aguilar, being duly sworn, depose and state:

1.       I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code. That is, I am an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, violations of Title 18 of the United States Code.

2.       The information contained in this affidavit is based upon my personal knowledge and observations, my training and experience, conversations with other law enforcement officers and witnesses, and my review of documents and records related to this case.

3.       I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since June 2022. I am currently assigned to the Boston Division, Bangor Resident Agency, of the FBI. As part of my duties, I investigate crimes involving the sexual exploitation of minors, including the production, possession, and distribution of child pornography. I received training on the proper investigative techniques for these violations, including the use of surveillance techniques, undercover activities, and the application and execution of arrest and search warrants.

4.       This affidavit is made in support of an application for a search warrant for information stored on Snapchat account with username "Thefungi689" and user ID "abed2b57-0d4e-4412-b8f5-8bfe6041cfa0" (hereinafter SNAP ACCT 1) (Hereinafter referred to as SNAPCHAT ACCOUNT).

1

5.      Specifically, this application is seeking a warrant to search information regarding the digital data located on the SNAPCHAT ACCOUNT as further described in Attachment A.

6.      As set forth in more detail below, I respectfully submit that there is probable cause to believe that evidence, contraband, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251(a) (Production of Child Pornography), 18 U.S.C. §§ 2252A(a)(2) (Receipt or Distribution of Child Pornography), 18 U.S.C. §§ 2252A(a)(3)(b) (Solicitation of Child Pornography), 18 U.S.C. §§ 2252A(a)(5)(b) (Possession of Child Pornography), 18 U.S.C. §§ 2422(b) (Coercion and Enticement), as well as 18 U.S.C. §§ 2252A(b)(1) and 2252A(b)(2) (Attempt), (Collectively referred to as the "TARGET OFFENSES") is located within the SNAPCHAT ACCOUNT.

## STATUTORY AUTHORITY

7.      As noted above, this investigation concerns alleged violations of: U.S.C. § 2251(a) which provides that any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by

any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

8.    18 U.S.C. §§ 2252A(a)(2), which provides that any person who knowingly receives or distributes any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

9.    18 U.S.C. §§ 2252A(a)(3)(b), which provides that any person who knowingly advertises, promotes, presents, distributes, or solicits through the mails, or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or contains an obscene visual depiction of a minor engaging in sexually explicit conduct; or a visual depiction of an actual minor engaging in sexually explicit conduct.

10.    18 U.S.C. §§ 2252A(a)(5)(b), which provides that any person who knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have

3

been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

11.    18 U.S.C. §§ 2422(b), which provides that whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

12.    18 U.S.C. §§ 2252A(b)(1), which provides that whoever violates, or attempts or conspires to violate, paragraph (1), (2), (3), (4), or (6) of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years, but, if such person has a prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, or sex trafficking of children, such person shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years. This statute pertains to the attempt to violate 18 U.S.C. §§ 2252A(a).

13.    18 U.S.C. §§ 2252A(b)(2), which provides that whoever violates, or attempts or conspires to violate, subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years, or both, but, if any image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age, such

4

person shall be fined under this title and imprisoned for not more than 20 years, or if such person has a prior conviction under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

### BACKGROUND CONCERNING SNAPCHAT[1]

14.     Snap Inc., the owner of Snapchat, is a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Snapchat is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Snapchat accounts like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Snapchat users.

15.     Snap collects basic contact and personal identifying information from users during the Snapchat registration process.

16.     Snap also collects and retains information about how each user accesses and uses Snapchat. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information

---

[1] The information in this section is based on information published by Snap on its website, including, but not limited to, the following document and webpages: "Snap Inc. Law Enforcement Guide," available at https://storage.googleapis.com/snap-inc/privacy/lawenforcement.pdf; and "Snapchat Support," available at https://support.snapchat.com/.

about devices and web browsers used to access an account, and session times and durations. Each Snapchat account is identified by a display name or username.

Snapchat offers four primary ways for users to communicate with each other.

17.    **Snaps.** A user takes a photo or video using their camera phone in real-time. The user then selects a time limit of 1-10 seconds for the receiver to view the photo or video. A user can elect to have the photo/video saved in their phone's photo gallery or just sent via Snapchat, without being saved. The photo/video can then be sent to a friend in Snapchat. The snap is deleted after the selected amount of time. If a recipient attempts to take a screenshot of the snap to save on his/her phone, the application will notify the sender of this behavior.

18.    Snapchat states that it deletes each snap from its servers once all recipients have viewed it. If a snap has not been viewed by all recipients, Snapchat states that it retains the snap for thirty days.

19.    **Memories.** Memories is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by Snapchat and may remain in Memories until deleted by the user.

20.    **Stories.** A user can also add the photo/video Snap to their "Story." Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories.

21.    **Chat.** A user can also type messages to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by

6

both parties – and both parties' swipe away from the Chat screen – the message will be cleared.  Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message (text or photo) that he or she wants to keep. The user can clear the message by tapping it again.

22.    Snapchat also obtains a variety of non-content information from its users.

23.    **Usage Information**.  Snapchat may collect information about how users interact with its services, including which search queries they submit, and how they communicate with other users, including maintaining a log of all snaps to and from an account for the last 31 days, for 24 hours of posted Stories, and for any unopened Chats or those saved by a sender or recipient, and how a user interacts with these messages (such as when a user opens a message).

24.    **Device Information**.  Snapchat collects information about the devices of its users, including information about the user's hardware and software, such as the hardware model, operating system version, device memory, advertising identifiers, unique application identifiers, apps installed, unique device identifiers, browser type, language, battery level, and time zone; information from device sensors, such as accelerometers, gyroscopes, compasses, microphones, and whether the user has headphones connected; and information about the user's wireless and mobile network connections, such as mobile phone number, service provider, and signal strength.

25.    **Device Phonebook**.  Snapchat may collect information about the phonebook of the user's device.

26.    **Cameras and Photos**.  Snapchat may collect images and other information from the user's device's camera and photos.

27.    **Location Information**.  Snapchat may collect information about the

7

user's location, including precise location using methods that include GPS, wireless networks, cell towers, Wi-Fi access points, and other device sensors, such as gyroscopes, accelerometers, and compasses.

28.    **Snap Map**.  Snapchat allows a user to share location information with his/her friends and also obtain location information about the user's friends.  Based on such information, Snapchat places the friends' locations on a map viewable to the user.

29.    **Information Collected by Cookies and Other Technologies**.  Snapchat may collect information through cookies and other technologies about the user's activity, browser, and device.

30.    **Log Information.**  Snapchat collects log information when a user uses Snapchat's website, including device information, access times, pages viewed, IP address, and pages visited.

31.    In my training and experience, evidence of who was using SUBJECT ACCOUNTS, from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.  Information such as IP address data, location history, and meta data from images and videos will allow law enforcement to further the investigation.

32.    For example, the stored communications and files connected to a Snapchat account may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos,

videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

33.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Snap can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

34.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

35.     Other information connected to the use of the Snapchat account may lead to the discovery of additional evidence. For example, the data may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators, such as other messaging platforms used, and money service businesses

used such as Cash App.  In addition, instant messages, Internet activity, documents, and contact can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

36.     Therefore, Snap's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Snapchat.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **PROBABLE CAUSE**

37.     On or about July 09, 2024, financial information was obtained by the FBI that indicated that Cash App user with account token "C_g0epjayc3" ("CASH APP 1") and "C_oyeerom14" ("CASH APP 2") was engaged in behavior consistent with sextortion of minors and adults via the Cash App and Snap Chat platforms.

38.     During investigative review for CASH APP 1, I observed transactions from CASH APP 1 that started on or about December 15, 2023, and ended approximately on March 28, 2024. The following are messages related to each transaction that was sent of relevance to/from CASH APP 1:

12/15/23 (CASH APP 1 to User 1[2])- "add my snap back"

12/15/23 (CASH APP 1 to User 1)- "add my snap back"

12/18/23 (User 2 to CASH APP 1)- "still selling nudes"

---

[2] I was able to consult with the head of investigations of Cash App (Block Inc.) regarding the messaging capability of Cash App. In sum, while Cash App is not supposed to be used as a messaging platform, users are allowed with each transaction they generate, able to send a note along with the transaction to label what the transaction is for. The sender/initiator of every transaction is the person who types out the note. As Cash App is not a messaging platform, messages found per transactions are not continuous dialogue between users.

02/16/24 (CASH APP 1 to Suspected Minor Victim 1 (MV1))- "I have your nudes add me back or else's"

02/16/24 (CASH APP 1 to MV1)- "send me more and I'll ad u"

02/16/24 (CASH APP 1 to MV1)- "last chance"

02/16/24 (CASH APP 1 to MV1)- "nope I wont accept one dollar"

02/16/24 (CASH APP 1 to MV1)- "there"

02/16/24 (CASH APP 1 to MV1)- "kys"

02/16/24 (MV1 to CASH APP1)- "I'll just post what I got"

02/16/24 (MV1 to CASH APP 1)- "you gonna add back or nah"

02/16/24 (MV1 to CASH APP 1)- "yo how come you ghost me"

02/19/24 (User 3 to CASH APP 1)- "wow I'd add me back or else"

02/19/24 (Minor Victim 2 (MV2) to CASH APP 1)- "damn was just about to pay you to oh well"

02/19/24 (MV2 to CASH APP 1)- "I hope you die in a hole and im 16 LOL a minor"

02/19/24 (MV2 to CASH APP 1)- "you coulda got paid but after all what you said no"

02/19/24 (MV2 to CASH APP 1)- "kinda felt bad after why you said you needed it"

02/19/24 (MV2 to CASH APP 1)- "man all you had to do was keep talking almost"

02/19/24 (MV2 to CASH APP 1)- "but instead flush 160$ down the drain"

02/19/24 (CASH APP 1 to MV2)- "here's a gift lol"

02/19/24 (MV2 to CASH APP 1)- "I don't want your money bye"

02/19/24 (MV2 to CASH APP 1)- "yeah you do don't lie you want the 160$"

02/19/24 (MV2 to CASH APP 1)- "and if that's the case give it all back"

02/21/24 (CASH APP 1 to User 4)- "I'll send more if you send me nudes on snap"

02/29/24 (User 5 to CASH APP 1)- "I got locked outta my snap what's your snap"

03/28/24 (CASH APP 1 to User 6)- "do you still wanna do nudes for cash?"

39.     During investigative review for CASH APP 2, I observed transactions from CASH APP 2 that started on or about March 25, 2024, and ended approximately on April 19, 2024. The following are messages related to each transaction that was sent of relevance to/from CASH APP 2:

03/27/24 (CASH APP 2 to User 5)- "take it you don't wanna do this anymore huh"

03/27/24 (CASH APP 2 to User 7)- "is it cool if I show my friends a pic of those pic"

03/27/24 (CASH APP  2 to User 7)- "pay me first"

03/27/24 (User 7 to CASH APP 2)- "no lol"

03/28/24 (CASH APP 2 to User 5)- "if you add me back we can still do the nude thing"

03/28/24 (CASH APP 2 to User 5)- "or at the least can I show my friends your stuff"

03/28/24 (CASH APP 2 to User 5)- "okay well ima show people lmao take care"

03/28/24 (CASH APP 2 to User 5)- "add me back on snap and send me nudes and I won't"

03/28/24 (CASH APP 2 to User 6)- "do you still wanna do nudes for cash if so lmk"

03/31/24 (CASH APP 2 to User 8)- "I'll buy nudes off you"

03/31/24 (CASH APP 2 to User 9)- "we gonna do this??"

04/10/24 (CASH APP 2 to User 10)- "I'll be posting what you sent me"

04/19/24 (CASH APP 2 to Minor Victim 3 (MV3))- "let nic know I'm exposing yall"

**CASH APP**

40.    CASH APP 1 consisted of subscriber information linked to the account. The identity name associated with CASH APP 1 is Austin Cocchiaro (hereinafter SUBJECT), with a year of birth listed as 2001, last four of Social Security Account Number listed as 6267. On December 15, 2023, two addresses were linked to CASH APP 1: Cr Road 3910, Independence, MO 64015 and 11 Flint Lane, Bangor, ME 04401. The display name for CASH APP 1 has changed multiple times, but with the most recent display name being "Austin" on May 14, 2022.

41.    CASH APP 1 subscriber information listed the email address bigassbird234@gmail.com, and phone number XXX-X85-6093. The subscriber record for CASH APP 1 also listed the account as being linked with Bangor Savings Bank.

42.    On March 20, 2024, CASH APP 1 was associated and linked to an iPhone that was used to log into CASH APP 1 with.

43.    CASH APP 1 conducted numerous transactions with MV1 during the time of February 15, 2024, and February 16, 2024. An investigative review of the IP address logins associated with CASH APP 1 during February 15, 2024, and February 16, 2024, revealed that CASH APP 1 was using IP address 74.78.184.101.

44.    On or about August 08, 2024, legal process was served to Charter Communications for subscriber information related to IP address 74.78.184.101 on 02/16/2024 at 02:53:06 UTC. The subscriber information subsequently resolved to Sarah Brown, 11 Flint Ln, Bangor, ME 04401. The SUBJECT is known by law enforcement to reside at 11 Flint Ln, Bangor, Maine 04401.

45.    Open-source records revealed that Sarah Brown is the grandmother of Austin Cocchiaro (SUBJECT).

46.    Open source records revealed that phone number XXX-X85-6093 is associated with Snap Chat account "dox_ryan".

47.    On or about July 12, 2024, legal process was served to Snap Chat for subscriber information related to Snap Chat account "dox_ryan". The subscriber information subsequently showed that the dox_ryan account was created on April 04, 2024, with IP address 74.78.184.101. A review of the IP address log-ins associated with the account revealed that the account had log-ins with IP address 24.198.107.50 on July 09, 2024. Open-source research revealed that IP address 24.198.107.50 resolves to the Orono, Maine area. Account details show that the user of the account signed into the dox_ryan account utilizing an iPhone 14 from April 2024 through July 2024. In June 2024, an iPhone 9 attempted to login which failed due to a wrong password.

48.    On February 21, 2024, at 23:57:18 UTC, CASH APP 1 sent a transaction with the message attached "I'll send more if you send me nudes on snap" to an unknown Cash App user. Based on IP log-ins, this transaction was using IP address 74.78.184.101 on that date and time.

49.    On or about August 08, 2024, legal process was served to Charter Communications for subscriber information related to IP address 74.78.184.101 on February 21, 2024 at 23:57:18 UTC. The subscriber information subsequently resolved to Sarah Brown, 11 Flint Ln, Bangor, Maine 04401.

50.    CASH APP 1 and CASH APP 2 both had transactions with Cash App User 6. On February 24, 2024, at 04:44:40 UTC, CASH APP 1 attempted to pay User 6 $30.00. The transaction at that time and date used IP address 24.97.42.26. On March 28, 2024, at 21:55:21 UTC, CASH APP 2 attempted to pay User 6 $1.00 and attached a comment to the transaction stating "do you still wanna do nudes for cash if so lmk". On or about

August 2024, legal process was served to Charter Communications for subscriber information for IP addresses including 24.97.42.26 from 2/24/2024 at 04:44:40 UTC (approximately 11:40 PM EST). The subscriber information resolved to "Bagel Central" located at 33 Central Street, Bangor, Maine 04401. Law enforcement data shows that the SUBJECT is employed as a baker at Bagel Central.

**MV3**

51.    On or about July 30, 2024, pursuant to legal process served to Block Inc. (also known as Cash App), MV3 was identified via subscriber information. In review of payment information between CASH APP 2 and MV3; On March 26, 2024, at 18:34:50 UTC CASH APP 2 paid MV3 $20.00. On March 28, 2024, at 07:06:13 UTC CASH APP 2 paid MV3 $5.00. On April 19, 2024, at 02:52:44 UTC CASH APP 2 paid MV3 $1.00 and stated a comment with the payment "let nic know I'm exposing yall".

52.    On or about September 06, 2024, FBI located and identified in person MV3. Of note, MV3 turned 18 years old in May 2024. The conduct between MV3 and CASH APP 2 took place when MV3 was 17 years old at the time of the Cash App transactions in March and April 2024. Subsequent agent interview of MV3 disclosed the following:

53.    Although MV3 did not recall the username of the SUBJECT, MV3 recalled the SUBJECT's first name as "Austin". MV3 recalled that the SUBJECT added her on Snapchat through Snapchat's quick add feature in approximately March 2024. The SUBJECT immediately began to ask MV3 for sexually explicit photos in exchange for money to be sent through Cash App. MV3 advised that there was no casual conversation between them. MV3 needed money and agreed to send the SUBJECT photos. MV3 sent

the SUBJECT fully nude or partially nude photos only on Snapchat[3]. After MV3 sent the photos, MV3 recalled confronting the SUBJECT because she never received the money. The SUBJECT then blocked MV3 on Snapchat.

54.    MV3 has not communicated with the SUBJECT since April 2024. MV3 did not disclose her age to the SUBJECT and the SUBJECT never asked MV3's age. MV3 believes that when the SUBJECT stated in his Cash App transaction "let nic know I'm exposing yall", that the SUBJECT was referring to her local friend Minor Victim 4 (MV4). MV3 knows that MV4 and another local friend had communications with the SUBJECT.

## MV4

55.    MV4 was interviewed by FBI Special Agents on September 06, 2024, and is confirmed to be 15 years old. MV4 confirmed that she was close friends with MV3 and was also involved in similar activity with the SUBJECT as MV3 was. MV4 was added by the Snapchat username of "fungi something" through Snapchat's quick add feature. MV4 recalled that the SUBJECT used an unknown fake name at first when they communicated. MV4 eventually learned that the SUBJECT's name is "Austin" through conversation with the SUBJECT. MV4 and the SUBJECT engaged in normal conversation before it turned sexual in nature. The SUBJECT asked MV4 to send "inappropriate" photos and videos in exchange for money. The money was not sent to MV4's Cash App account, but to the Cash App account of MV3 and a 19-year-old female

---

[3] While law enforcement witness interview with MV3 revealed that MV3 was asked to produce "sexually explicit photos" by the SUBJECT and thereafter produced "fully nude or partially nude photos", the FBI does not currently have copies of the images depicting what was produced by MV3.

friend of MV3 and MV4. MV4 recalled that she sent several sexually explicit videos and photos [4] to the SUBJECT for over approximately $100.

56.    MV4 did not recall the number of photos sent to the SUBJECT but did recall that two of the photos included knives and some should have red LED lights illuminating the background. MV4 advised that the SUBJECT attempted to extort MV4 into sending more photos by threatening to "kill himself" and stated, "he has access to guns". MV4 advised that the SUBJECT also sent her sexually explicit photos of himself to MV4. MV4 stated that the photos were gross, so she deleted them.

57.    MV4 believes that the photos were sent in approximately February and March 2024 but ended in March when MV4 blocked the SUBJECT and MV4 got a boyfriend.MV4 recalled that the SUBJECT attempted to add her back recently.

**SNAP CHAT ACCOUNTS**

58.    As mentioned in paragraph 42, legal process was served to Snap Chat on or about July 12, 2024. The legal process also obtained subscriber information for Snap Chat account "Thefungi689" (SNAP ACCT 1). SNAP ACCT 1 was obtained by the FBI from local police reports related to the SUBJECT. The subscriber record for SNAP ACCT 1 revealed that the account is associated with phone numbers XXX-X59-0329 and XXX-X49-0787. SNAP ACCT 1 has an email address associated, acocchiaro2001@gmail.com. SNAP ACCT 1 was created on or about November 27, 2016.

59.    A review of IP logins for SNAP ACCT 1 revealed that a historical log-in from May 01, 2024, and a recent log-in on June 23, 2024, was using IP address

---

[4] While law enforcement witness interview with MV4 revealed that MV4 was asked to produce "inappropriate" photos by the SUBJECT and thereafter produced "sexually explicit videos and photos", the FBI does not currently have copies of the images depicting what was produced by MV4.

24.198.107.50. Legal process was served to Charter Communications for subscriber information related to IP address 24.198.107.50 for the dates of May 01, 2024, at 22:50:13 UTC and June 23, 2024, at 19:46:21 UTC. The legal process return obtained from Charter Communications for the date/ times of May 01, 2024, at 22:50:13 UTC and June 23, 2024, at 19:46:21 UTC show that the subscriber information resolves to Sarah Brown located at 11 Flint Lane, Veazie, Maine 04401.

60.    On or about July 16, 2024, and November 01, 2024, the FBI issued Snap Inc. a preservation letter for Snap Chat accounts "Thefungi689" and "dox_ryan". The current preservation letter is valid until approximately February 01, 2025.

## ALIASES AND OTHER FINANCIAL ACCOUNTS

61.    On or about July 2024, legal process was served to PayPal for subscriber information related to the Venmo account with username "parodox420" and name "Jasper Cocchiaro". Legal process results yielded a Venmo account ending in 6629. The account is held by Jasper Cocchiaro, DOB: 8/8/2001, address: 11 Flint Ln, Veazie, ME 04401, phone number: XXX-X85-6093, email address: acocchiaro2001@gmail.com.

62.    In July 2024, legal process was served to PayPal for subscriber information for any accounts associated with email address "acocchiaro2001@gmail.com". Legal process results yielded two PayPal accounts ending in 8051 and 5568. Account ending in 8051 has an account name of Austin Cocchiaro, address: 313 Smith Road, Hermon, ME 04401, mobile phone: 207-659-1464, and email address: "acocchiaro2001@gmail.com". Account ending in 5568 has an account name of Jasper Cocchiaro, DOB: 6/8/2001, address: 11 Flint Ln, Veazie, ME 04401, mobile phone: 207-285-6093, and email address of "acocchiaro2001@gmail.com".

63.     On or about August 2024, legal process was served to Google for subscriber information related to email address: "acocchiaro2001@gmail.com". The legal process yielded a Google account ending in 2499 with account name "Austin Cocchiaro", created 10/17/2017.

64.     Open-source research conducted for the name Jasper Cocchiaro in the state of Maine resulted in no positive matches. Based on the information mentioned above, I believe that the SUBJECT created a fictitious name with similar personal identifiers to his true identity, such as date of birth, email accounts, and phone numbers.

## CRIMINAL HISTORY

65.     After an incident that took place on or about September 20, 2020, the SUBJECT was arrested and subsequently convicted in Maine state court for dissemination of sexually explicit material and possession of sexually explicit material where the victim was 12 years old at the time.

66.     The local police report states "The incidents did not involve physical contact, but instead coercion in the form of threats to disseminate nude photos, if the victim did not provide more explicit photos or videos. This was done through online means, using the instant messaging app, Snap Chat".

67.     The SUBJECT is a Tier III- lifetime registered sex offender with Sex Offender Registry Act (SORA) # 11516. The SUBJECT was sentenced on January 05, 2023, to incarceration of 3 years and 6 months (All but 1 year 0 months suspended), and 3 years of probation. The SUBJECT was released from jail on or about December 2023 and is currently on probation in the state of Maine.

68.     In my training and experience, adults frequently target minors semi-anonymously through friending on Snapchat via the quick add feature in order to solicit sexual material from them. Based on records obtained from Cash App for CASH APP 1 and CASH APP 2, all transactions in those accounts that were identified in the legal process took place after the SUBJECT was released from jail.

69.     Based on the information mentioned above, I believe that the SUBJECT has engaged in the violation of TARGET OFFENSES through the means of Cash App and Snap Chat usage with individuals who were minors at the times of the transactions. The SUBJECT has engaged in this conduct after being released from jail after being convicted of similar conduct with a verified 12-year-old victim. I also believe that contraband evidence of such TARGET OFFENSES are likely to be found in SNAP ACCT 1.

## **CONCLUSION**

70.     Based on the forgoing, I request that the Court issue the proposed search warrant.

71.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on **Snap Inc.**. Because the warrant will be served on **Snap Inc.**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

JOSE G. RODRIGUEZ AGUILAR
Special Agent
Federal Bureau of Investigation

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: Nov 12 2024

City and state: Bangor, ME

Judge's signature

John C. Nivison U.S. Magistrate Judge
Printed name and title

21